## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

DARCEL RODULFO,

    Plaintiff,

    vs.                            No. CV  20-00735 KG/SCY

FRESNIUS MEDICAL CARE,

    Defendant.

### MEMORANDUM OPINION AND ORDER

The sole count of Plaintiff Darcel Rodulfo's Complaint alleges that Defendant Fresnius Medical Care discriminated against her by not reasonably accommodating her disability in violation of the New Mexico Human Rights Act, N.M.S.A. 1978, § 28-1-7 (NMHRA). Defendant now seeks summary judgment on that claim.[1] The Motion is fully briefed.[2] After considering the parties' briefing, the record of the case, and the applicable law,[3] the Court will deny Defendant's Motion.

**I.   Procedural & Factual Background**

On June 16, 2020, Plaintiff filed a Complaint with the Second Judicial District Court, in Bernalillo County, New Mexico. On July 22, 2020, Defendant removed the case to federal court based on diversity.

---

[1] *See* Defendant's Motion and Memorandum in Support of Motion for Summary Judgment (Doc. 34).
[2] *See* Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment (Doc.39); Defendant's Reply in Support of Its Motion for Summary Judgment (Doc. 42).
[3] In its Motion Defendant requested a hearing. After reviewing the briefing and the record, the Court finds that the issues may be resolved on the record, and so, denies the request.

Facts set forth in Defendant's Motion that are not specifically controverted by Plaintiff are deemed undisputed.  *See* D. N.M. LR-CIV 56.1(b).  The following facts are undisputed or where disputed, are presented in the light most favorable to Plaintiff.

Defendant is a provider of dialysis to patients with kidney disease and operates outpatient clinics and acute hospital units throughout the United States.  The process involves connecting patients intravenously to machines that clean the patients' blood of toxins by running it through a filter (a dialyzer).  Much of the equipment used during the dialysis process is large and heavy. Doc. 34-1 ¶ 3.

One of Defendant's operations, the Albuquerque Acute Unit, provides dialysis treatment to patients at several hospitals in the Albuquerque area.  Employees within the unit operate independently.  Their duties include moving equipment during the dialysis process. Doc. 34-1 ¶ 5; Doc. 34-2 at 26:4-14.

Plaintiff worked in the Albuquerque Acute Unit as a Patient Care Preceptor III (PCT). Doc. 34-1 at 15.  The job description for Plaintiff's position states in relevant part:

> The physical demands and work environment characteristics described here are representative of those an employee encounters while performing the essential functions of this job.  Reasonable accommodations may be made to enable individuals with disabilities to perform the essential functions.

> Day to day work includes desk and personal computer work and interaction with patients, facility staff and physicians.  The position requires travel between assigned facilities and various locations within the community.  Travel to regional, Business Unit and Corporate meetings may be required.

> . . .

> The position provides direct patient care that regularly involves heavy lifting and moving of patients, and assisting with ambulation. Equipment aids and/or coworkers may provide assistance.  This position requires frequent, prolonged periods of standing and the employee must be able to bend over.  The employee

> may occasionally be required to move, with assistance, machines and equipment
> of up to 200 lbs., and may lift chemical and water solutions of up to 30 lbs. up as
> high as 5 feet.  There is a two-person assist program and "material assist" devices
> for the heavier items.

Doc. 34-1 at 10-11.

In January 2018, Plaintiff had a car accident that made chronic pain in her back worse.

Doc. 39 at 16:14-21.

In November 2018, Phillip Trujillo became the Director of Operations of the

Albuquerque Acute Unit.  One of his responsibilities included ensuring that each location was

sufficiently staffed. *Id.* ¶¶ 4-6.

Employees within the Acute Unit work at several different locations throughout the

Albuquerque area.  For this reason, Acute Unit employees must be able to work independently,

and move equipment during the dialysis process. *Id.* ¶ 5.

Between January and November 2018, Plaintiff had been permitted to work at only one

Acute Care center on a temporary basis because of transportation issues. *Id.* ¶ 8.

On November 13, 2018, Trujillo met with Plaintiff regarding her request to work only at

a single Acute Unit location.  *Id.* ¶ 9.

Trujillo informed Plaintiff that she would need to return to working at multiple Acute

locations because Defendant needed to ensure coverage at each one of the hospitals at which it

provided dialysis services in the Albuquerque unit.  *Id.*

On November 26, 2018, Plaintiff went on approved medical leave under the Family and

Medical Leave Act (FMLA). *Id.* ¶ 10.  On February 6, 2019, Plaintiff's leave expired.  Because

Plaintiff was not ready to return to work, on February 7, 2019, Defendant placed her on a Non-

FMLA/General Medical Leave. *Id.* ¶ 11.  During a portion of her leave time, Plaintiff also received short-term disability benefits.  Doc. 34-2 at 60:1-18.

On February 16, 2019, Plaintiff submitted a Certification of Ability to Return to Work from her healthcare provider (Certification).   Doc. 34-1 at 13.  The Certification stated that Plaintiff could return to work on February 18, 2019, with a restriction that prohibited her from lifting more than 15 pounds.  *Id.*  The Certification did not place any length of time on the restriction, but Plaintiff indicated that she believed it was for life.  Doc. 34-2 at 58:5-16, 104:21-24.

Trujillo met with Plaintiff on February 20, 2019, to discuss her return.  Doc. 34-1 ¶ 14.  On February 21, 2020,[4] Trujillo sent Plaintiff a letter confirming the information he gave her at the meeting.  Doc. 34-1 at 15.  In the letter, Trujillo advised Plaintiff that she had 30 days or until March 21, 2019, to identify and be selected for an alternate position in the company.  He also informed Plaintiff that she could contact Defendant's Leave Management Office to request an extension of her general leave.  *Id.*

On March 4, 2019, Trujillo contacted Plaintiff to discuss her status.  During this discussion, Trujillo told Plaintiff that because of the staffing needs of the Albuquerque Acute Unit, Defendant would be posting her position.  Doc. 34-1 at 17.  He further explained that as she remained on Non-FMLA/General Medical Leave, "[she] would be provided up to the end of the business day March 21, 2019, to identify and be selected for an alternate position with [Defendant]."  Doc. 34-1 ¶ 16.  Finally, Trujillo informed Plaintiff that she could contact Defendant's Leave Management Office if she needed to request an extension of her leave.  *Id.*

---

[4] Plaintiff states that the letter is incorrectly dated February 20, 2019. *See* Doc. 34 at 7.

After their conversation, Trujillo sent Plaintiff a letter confirming the substance of their discussion. *Id.* Plaintiff's approved leave ended on March 21, 2019. Over the next few weeks, Trujillo attempted to call Plaintiff four more times. Doc. 34-1 at 19. Plaintiff did not respond. *Id.*

On April 12, 2019, Trujillo sent Plaintiff a letter. *Id.* The letter explained that Trujillo had attempted to contact Plaintiff four times between March 25, and April 10, 2019. *Id.* Trujillo stated that because Plaintiff had not contacted him or the Leave Management Office since her leave expired on March 21, 2019, he did not know whether she intended to return to work. *Id.* The letter further explained that if Plaintiff wanted to extend her leave, she must contact either Trujillo or the Leave Management Office within five days of her receipt of the letter to submit supporting documentation to extend her leave. *Id.* Finally, the letter stated that if Plaintiff did not contact Defendant within that time, Defendant would assume she had abandoned her employment with them. *Id.* Plaintiff received the letter but did not contact Defendant. Doc. 34-2 at 15:8.

On April 26, 2019, Trujillo wrote Plaintiff a final letter. Doc. 34-1 at 21-22. In the letter, Trujillo stated that because Plaintiff had not contacted Defendant, her employment would be administratively terminated on the grounds that Plaintiff had abandoned her job. Plaintiff received the letter but did not contact Defendant. Doc. 34-2 at 108:13-22. On April 27, 2019, Defendant terminated Plaintiff's employment.

## II. Discussion

### A. Summary Judgment Standard

"[I]n a federal diversity action, the district court applies state substantive law—those

5

rights and remedies that bear upon the outcome of the suit—and federal procedural law—the processes or modes for enforcing those substantive rights and remedies." *Los Lobos Renewable Power, LLC v. Americulture, Inc.*, 885 F.3d 659, 668 (10th Cir. 2018).   This means that when considering a summary judgment motion, a federal judge "will look to [state law] to determine what elements the plaintiffs must prove at trial to prevail on their claims" but "exclusively to federal law to determine whether plaintiffs have provided enough evidence on each of those elements to withstand summary judgment." *Milne v. USA Cycling Inc.*, 575 F.3d 1120, 1129 (10th Cir. 2009) (internal citations omitted).

A court may grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Wolf v. Prudential Ins. Co. of Am.*, 50 F.3d 793, 796 (10th Cir. 1995) (quotation omitted).  When applying this standard, the Court examines the factual record and reasonable inferences in the light most favorable to the party opposing summary judgment. *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990).  "Once the moving party has met its burden, the burden shifts back to the nonmoving party to show that there is a genuine issue of material fact." *Jensen v. Kimble*, 1 F.3d 1073, 1077 (10th Cir. 1993) (citing *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991)).  Disputes are genuine "if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way," and they are material "if under the substantive law it is essential to

the proper disposition of the claim." *Becker v. Bateman*, 709 F.3d 1019, 1022 (10th Cir. 2013)

(further citation and internal quotation marks omitted). "A plaintiff 'cannot avoid summary

judgment merely by presenting a scintilla of evidence to support her claim; she must proffer facts

such that a reasonable jury could find in her favor.'" *Milne*, 575 F.3d at 1130 (quoting *Turner v.*

*Pub. Serv. Co. of Colorado*, 563 F.3d 1136, 1142 (10th Cir. 2009) (further citation omitted)). In

deciding a motion for summary judgment, the court does not make credibility determinations but

leaves that function for the jury at trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255

(1986).

    **B.**    **Analysis**

    Plaintiff's Complaint alleges that Defendant violated the NMHRA by not reasonably

accommodating and discriminating against her because of her disability in the terms and

conditions of her employment. Doc. ¶¶ 12, 13. Defendant's Motion contends that it is entitled to

summary judgment on Plaintiff's NMHRA failure to accommodate claim, because Plaintiff did

not establish the elements of her *prima facie* case and she abandoned the interactive process.

Doc. 34 at 15.

    The NMHRA makes it an unlawful discriminatory practice for "any employer to refuse

or fail to accommodate a person's physical or mental handicap or serious medical condition,

unless such accommodation is unreasonable or an undue hardship." § 28-1-7(J). When

interpreting the NMHRA, New Mexico courts look to the federal American with Disabilities Act

(ADA). *See Trujillo v. N. Rio Arriba Elec. Co-op., Inc.*, 41 P.3d 333, 338 (N.M. 2002). But the

New Mexico Supreme Court has cautioned that it has not "adopted federal law as our own," and

so does not confine "New Mexico law to interpretations made by the federal courts of the federal

statute." *Id.*

To establish a disability claim under the NMHRA, a plaintiff must demonstrate "(1) that [she] is a disabled person within the meaning of the [NMHRA]; (2) that [she] is qualified; and (3) that the employer terminated [her] because of the disability. *Id.* (quoting *White v. York Int'l Corp.*, 45 F.3d 357, 360-61 (10th Cir. 1995) (explaining requirements of ADA). "Once the employee produces evidence sufficient to make a facial showing on . . . her prima facie case, the burden of production shifts to the employer to present evidence either (1) conclusively rebutting one or more elements of plaintiff's prima facie case or (2) establishing an affirmative defense, such as undue hardship or one of the other affirmative defenses available to the employer." *Punt v. Kelly Servs.*, 862 F.3d 1040, 1050 (10th Cir. 2017) (citing *Smith v. Midland Brake, Inc., a Div. of Echlin, Inc.,* 180 F.3d 1154, 1179 (10th Cir. 1999)). "If the employer does either of the above, summary judgment will be appropriate for the employer unless the employee then presents evidence establishing a genuine dispute regarding the affirmative defenses and/or rehabilitating any challenged elements of his or her prima facie case sufficiently to establish at least a genuine dispute of material fact as to such challenged elements." *Id.*

Defendant does not dispute that Plaintiff has a physical handicap that prevents her from lifting more than 15 pounds.[5] Defendant argues that Plaintiff's claim must fail because there are no factual disputes about whether Plaintiff is qualified and whether Defendant terminated her because of her disability. Doc. 34 at 18-19. Plaintiff counters that past evidence suggests that

---

[5] The NMHRA states that a physical or mental handicap is "a physical or mental impairment that substantially limits one or more of a person's major life activities. A person is also considered to be physically or mentally handicapped if the person has a record of a physical or mental handicap or is regarded as having a physical or mental handicap." § 28-1-2(M). The term "major life activities" is defined as "caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." § 28-1-2(N).

Defendant could reasonably accommodate her but nonetheless terminated her because of her disability.  Doc. 39 at 6.

A court considers two criteria to determine whether a plaintiff has shown that she is qualified as defined by the NMHRA.   First, the Court must examine whether Plaintiff's "impairment prevented her from performing the essential functions of her job."  *Robert v. Bd. of Cty. Comm'rs*, 691 F.3d 1211, 1216 (10th Cir. 2012) (citation omitted).  If a Plaintiff cannot perform the essential functions of the job, then a Plaintiff must show that nonetheless, she would have "been able to perform those functions if [Defendant] provided [her] reasonable accommodation.  *Id.* (citation omitted).  Whether a particular function is essential is a factual inquiry.  *Davidson v. Am. Online, Inc.*, 337 F.3d 1179, 1191 (10th Cir. 2003) (citation omitted).

After her FMLA leave, Plaintiff presented Defendant with Certification that stated she could return to work but could not lift more than 15 pounds.  It is undisputed that the job description for the PCT position Plaintiff held states that one of the requirements of the position is " to move and lift over 15 lb. on a regular basis."  Doc. 34 at 12.  Defendant argues that the job description's lifting requirements is per se evidence that Plaintiff could not perform the requirements of the PCT position.

Except the job description creates some ambiguity about the lifting requirements because it includes additional conflicting information.  The paragraph preceding the explanation of the lifting requirement also advises that "[r]easonable accommodations may be made to enable individuals with disabilities to perform the essential functions."  Doc. 34-1 at 10.  Generally, a court should not second guess an employer's judgment when the "description is job-related, uniformly enforced, and consistent with business necessity."  *Mason v. Avaya Commc'ns, Inc.*,

9

357 F.3d 1114, 1119 (10th Cir. 2004) (citing *Davidson v. Am. Online, Inc.*, 337 F.3d 1179, 1191 (10th Cir. 2003).  But the presence of the reasonable accommodation clause in the same section that establishes a lifting requirement is evidence that suggests that Defendant may not uniformly apply that requirement.

Assuming *arguendo*, that the lifting requirement was an essential function, Plaintiff must then show she could otherwise perform these functions with reasonable accommodation.  The NMHRA defines a "reasonable accommodation" as "modification or adaptation of the work environment, work schedule, work rules or work responsibilities, and reached through good faith efforts to explore less restrictive or less expensive alternatives to enable an employee to perform the essential functions of the job and does not impose an undue hardship on the employer. § 28-1-2(R).  To determine the "appropriate reasonable accommodation," the employee and employer should engage in an interactive process.  Whether an accommodation is reasonable is a mixed question of law and fact.  *Mason*, 357 F.3d at 1122.

"The employee must first demonstrate that [a requested] accommodation appears reasonable on its face."  *Mason*, 357 F.3d at 1122 (citing *US Airways, Inc. v. Barnett*, 535 U.S. 391, 401 (2002).  "After an employee makes this showing, the burden of production then shifts to the employer to present evidence of its inability to accommodate."  *Mason*, 357 F.3d at 1122 (citing *White,* 45 F.3d 361 361).  Plaintiff alleges that the evidence shows that her disability began in January 2018 and that Defendant accommodated her for ten months.  Because Defendant provided her with accommodation, and Defendant did not show any valid basis for discontinuing the accommodation, Plaintiff argues that Defendant terminated her because of her disability. Doc. 39 at 6.

Defendant disputes that it accommodated Plaintiff. Defendant argues that Plaintiff has offered no factual basis for this assertion other than Plaintiff's self-serving statements in her deposition. These statements, Defendant contends, are entitled to no weight because they are either unsupported or are hearsay. *Id.* at 3.

Rule 56 provides that deposition testimony may be used to support an assertion that a fact is "genuinely disputed." Rule 56(c)(1)(A). Contrary to Defendant's assertions, Plaintiff's sworn deposition statements are valid evidence.[6] Moreover, Plaintiff's statements are supported by other evidence that implied that Defendant was aware that it had been accommodating Plaintiff.

An affidavit from Trujillo asserts that he met with Plaintiff on November 13, 2018, and told her that "she would need to return to working at multiple Acute locations because [Defendant] needed to ensure coverage at each one of the hospitals at which it provided dialysis services in the Albuquerque Unit." Doc. 34-1. The meeting and Trujillo's statement that Plaintiff needed to return to previous duties support Plaintiff's allegations that Defendant had accommodated Plaintiff and knew it had accommodated Plaintiff for some time prior to that meeting.

Defendant argues there is no evidence that in January 2018 Plaintiff went through a formal accommodation procedure. Doc. 42 at 4. Yet Defendant has not contended, much less provided evidence that it has an accommodation policy or that accommodation cannot be extended informally.

Next, Defendant asserts that a purported discussion with a supervisor is insufficient proof

---

[6] Although in a failure to accommodate claim a plaintiff may not rely on her own sworn statements to dispute an employer's representations about the essential requirements of a job, *See Mason*, 357 F.3d at 1121, deposition testimony is permissible to establish other factual elements.

11

of accommodation because it is inadmissible hearsay. *Id.* But a supervisor's statement that Defendant would accommodate Plaintiff may fall within the non hearsay exception. As an employee of Defendant, the supervisor may have been an agent of Defendant. Statements that are excluded from hearsay, include any statements offered against an opposing party and made on its behalf by an "agent or employee on a matter within the scope of that relationship and while it existed." Fed. R. Evid. 801(2)(D). Plaintiff's testimony suggests both that Plaintiff believed that the supervisor had the authority to make decisions about accommodation and that her supervisor accommodated her. On those questions, Defendant has not offered rebuttal evidence. The nature and extent of the supervisor's authority to grant accommodation and whether Plaintiff was accommodated is a fact that is material to the question of whether Defendant could reasonably accommodate Plaintiff.

Defendant argues that even had it accommodated Plaintiff at some point in time, her claim still fails. Defendant correctly observes that "a plaintiff cannot use her employer's tolerance of her impairment-based, ostensibly temporary nonperformance of essential duties as evidence that those duties are nonessential. To give weight to such a fact would perversely punish employers by going beyond the minimum standards of the ADA by providing additional accommodation to their employees." *Robert,* 691 F.3d at 1217. Although Defendant's recitation of the law is correct, Defendant's conclusions are missing an important step.

Once the parties agree that an employee has a disability, and an employee suggests reasonable accommodations, the burden shifts to Defendant to show that it made a good faith effort to accommodate Plaintiff and that it was unable to do so because it was not possible or was an undue hardship. The NMRHA defines the contours of what constitutes an "undue hardship,"

which include any accommodations that cause significant difficulty or expense to an employer

considering several factors. *See* N.M. Stat. Ann. § 28-1-2(S). [7] But Defendant has not rebutted

Plaintiff's evidence that it previously accommodated Plaintiff with evidence that continuing such

accommodation, or that any other accommodation would be a hardship for Defendant.  Rather

Defendant assumes that the job description itself demonstrates hardship. *See* Doc. 34-1 at 5

(Affidavit by Trujillo stating "[t]he ability to lift heavy equipment is an essential function of the

PCT position" that is "critical to the functioning of the Acute Unit). At this stage, a reiteration of

the essential requirements of the job is not enough to demonstrate that there are no genuine

issues of material fact on whether Defendant could reasonably accommodate Plaintiff in another

manner.

Defendant also argues that Plaintiff did not engage in the interactive process and so

Plaintiff's claim must be dismissed.  The interactive process begins with an "employee providing

notice to the employer of the employee's disability and any resulting limitations, and expressing

a desire for reassignment if no reasonable accommodation is possible in the employee's existing

job." *Trujillo*, 41 P.3d at 340 (quoting *Smith*, 180 F.3d at 1172 n.10).  Once the interactive

process begins, "both parties have an obligation to proceed in a reasonably interactive manner"

to determine a reasonable accommodation. *Smith*, 180 F.3d at 1172.  Defendant does not

disagree that Plaintiff provided proper notice, asked for accommodation, and asked for

---

[7] These factors include: "(1) the nature and cost of the accommodation; (2) the financial resources of the employer involved in the provision of the reasonable accommodation; (3) the number of persons the employer employs; (4) the effect of the accommodation on expense and resources; (5) the impact of the accommodation otherwise upon the employer's business; (6) the overall financial resources of the employer; (7) the overall size of the business of an employer with respect to the number, type and location of its facilities; (8) the type of operation of the employer, including the composition, structure and functions of the workforce of the employer; or (9) the geographic separateness or administrative or fiscal relationship to the employer of the employer's facilities.

reassignment.  But Defendant alleges Plaintiff's subsequent actions demonstrate that she did not participate in the interactive process in good faith.

According to Defendant, after it determined that Plaintiff's "restrictions could not be accommodated in her current position, Defendant directed Plaintiff to its website to look for other vacant positions for which she could perform the essential functions with or without reasonable accommodation."  Doc. 34 at 14.  Defendant alleges that Plaintiff only applied for one job.  Then, after Trujillo's conversation with Plaintiff on March 4, Plaintiff "simply stopped communicating" with Defendant.  *Id.* at 15.

Plaintiff disputes this characterization of her actions.  She asserts that she applied for more than one job. She further alleges that Defendant did not engage in a good faith interactive process with her because Trujillo thwarted all her attempts to find another position with Defendant. These allegations rely on Plaintiff's deposition.

Plaintiff's sworn testimony indicates that she applied for several PCT positions:  (1) in February 2019, she applied to the San Mateo clinic, which is not an Acute Care Unit, and believed she was going to be transferred there; (2) she later learned that the transfer to the San Mateo clinic was withdrawn; (3) she applied online to a position at the Lovelace Hospital on Gibson, but never heard back; (4) Plaintiff also spoke with a supervisor at the Rio Rancho clinic that reportedly had openings for a position that Plaintiff felt she could do; (5) the supervisor at the Rio Rancho clinic told Plaintiff that she had received an email and did not want to get involved.  Plaintiff states that based on those interactions, she believed that Trujillo had blocked her from acquiring another position from Defendant. Defendant argues that this evidence is irrelevant because Plaintiff "fails to offer any admissible evidence to support Plaintiff's assertion

that Trujillo "blocked" her reassignment to a new position." Doc. 39 at 12-13.[8]

Plaintiff's testimony about what Trujillo told her during her conversation with him about whether he blocked her from obtaining another job is admissible under the exception for statements made by an opposing party. *See* Fed. R. Evid. 801(2)(D). Plaintiff testified:

> Q.   And you said you did have a subsequent conversation with Mr. Trujillo about the position, right?
> A.   Yes
> Q.   And he denied blocking you, correct?
> A.   Yes.
> Q.   And what did he tell you?
> A.   I – he told me that I needed to look for a job in the company, that I had 30 days. And I told him, I said, "I did have a position," I said, "but you blocked me." And he said, "I didn't block you." And I said, "Well that's what they told me, that you blocked me." And he said – he said, "No," he said – I told him, "You told him I had a write-up." He's all, "You don't have any write-ups." I said, "Exactly." And he said, "I told him that – they asked me if you were in good standing, and I told them yes. And they asked if I had any concerns about you, and I told them yes."
> Q.   And did you ask him what those concerns were?
> A.   No, and he didn't tell me.

Doc. 39 at 82:13-25, 83:1-10. Plaintiff argues that Trujillo's admission that he said he had concerns to a supervisor who was going to hire Plaintiff, followed by a withdrawal of the job offer indicates that Trujillo prevented her from obtaining employment elsewhere in the company.[9]

Notably, Defendant does not dispute that this conversation occurred. "A party that obstructs or delays the interactive process is not acting in good faith." *Smith*, 180 F.3d at 1173

---

[8] For clarity, because each physical page of the appendix includes four copied pages of Plaintiff's deposition, the Court does individually identify each line.

[9] Defendant also asserts that Plaintiff contradicts her timeline, arguing that Plaintiff talked to Trujillo before she talked to the San Mateo supervisor. But Plaintiff testified that she talked to the San Mateo supervisor before her conversation with Trujillo. *Id.* at 79:10-25. So her testimony is consistent.

(quoting *Beck v. Univ. of Wisconsin Bd. Of Regents*, 75 F.3d 1130, 1135 (7th Cir. 1996)).
Whether Trujillo, a representative of Defendant, blocked Plaintiff from obtaining another
position in the company is material on the issue of whether Defendant attempted to make
reasonable accommodations and whether Defendant participated in good faith in the interactive
process.

Defendant's final argument is that Plaintiff wrongfully terminated the interactive process.
Once the interactive process is triggered, both parties are obligated to participate. *Smith*, 180
F.3d at 1172. "A party that fails to communicate, by way of initiation or response, may also be
acting in bad faith." *Id.* (quoting *Baert v. Euclid Beverage, Ltd.,* 149 F.3d 626, 634 (7th Cir.
1998)). Plaintiff argues that she did not abandon her job, but she discontinued communication
with Defendant only after her employment ended on March 21, 2019. See Doc. 34-2 at 14:20-
22. Defendant counters that it did not terminate Plaintiff's employment until April 27, 2019, and
then only after she abandoned her position. To support its argument, Defendant relies on the
four letters Trujillo sent to Plaintiff.

In the first letter dated February 20, 2019, Trujillo notes that he had a meeting with
Plaintiff on that day and relays that the letter is a follow up to that conversation. Near the end of
the letter, Trujillo states, "If after March 21, 2019, you are unable to secure a position, you will
be subject to administrative termination." Doc. 34-1 at 15. The letter also informs Plaintiff that
her leave has been approved through February 17, 2019, and advises her that she may contact the
Leave Management Office if Plaintiff wishes to extend her leave.

The March 4, 2019, letter from Trujillo also acknowledges a conversation held on that
date between Trujillo and Plaintiff. The letter informs Plaintiff that Defendant will be posting

16

her job.  Then, Trujillo states "since you have been released to return to work you would be
provided up to the end of the business day March 21, 2019, to identify and be selected for an
alternate position with FMCNA."  *Id.* at 17.  Again, Trujillo tells Plaintiff that she may request
an extension to her leave of absence.

On April 12, 2019, Trujillo sent a third letter to Plaintiff. This letter documents Trujillo's
four attempts to speak with Plaintiff by phone.  The first attempt occurred on March 25, 2019.
Three more attempts occurred on April 2, April 3, and April 10, 2019.  Regarding administrative
termination, the April 12 letter states, "If you do not contact me or submit the supporting
documentation to the LMO within five (5) days of receipt of this letter, I will assume you will
have abandoned your position and the company will administratively terminate your
employment." *Id.* at 19.  The final April 26, 2019, letter informs Plaintiff that she is
administratively terminated.

All four letters refer to administrative termination.  Relying on the final two letters,
Defendant argues that Plaintiff was not administratively terminated until April 26, 2019.  Yet the
first two letters state that Plaintiff would be administratively terminated on March 21, 2019.
Notably, March 21, 2019, fell between the letters identifying that date as the administrative
termination date and the latter two letters identifying a new date.  The four calls documented in
the April 12, 2019 letter also began after the March 21, 2019 date.  Trujillo made his first call on
March 25, 2019.  The conflicting administrative termination dates create a fact question about
what Plaintiff reasonably believed.  The resolution of that question is material to the issue of
whether Plaintiff abandoned the interactive process when she stopped communicating with
Defendant.  It is also central to the question of whether Defendant's termination of Plaintiff was

due to job abandonment or because of her disability.

**III. Conclusion**

Plaintiff has presented evidence that creates material issues of fact about whether Defendant could have reasonably accommodated her disability and Defendant's motivations in terminating her employment.

IT IS ORDERED that Defendant's Motion for Summary Judgment is DENIED (Doc. 34).


UNITED STATES DISTRICT JUDGE